Our next case for argument is 24-1432, Google v. Nobots. Mr. Speed, please proceed. Thank you, Your Honor. Good morning. Nathan Speed on behalf of the appellant, Google. The lone issue in this case is an issue of claim construction and more specifically an issue of lexicography. The disputed claim phrase, it's a three-word phrase, acquiring interest data. There's no dispute that the term interest data is a coined term that the patentee explicitly defined in the specification to include active data or passive data or both. Acquiring has its plain and ordinary meaning, which is simply retrieving. The straightforward interpretation of this three-word phrase is retrieving passive data, active data, or both. That's straightforward. It's consistent with the specification. Under that construction, there's no dispute that Kitt's reference anticipates independent claim 19. The board reached a different determination by narrowly construing the claim based on lexicography, but the board's application of lexicography was too liberal. They went into the specification and found that there was another term defined, acquired data, and they took that definition of acquired data and said that that definition, which limits data to active data, applies to the separate claim phrase acquiring interest data. But respectfully, acquired data is not in the claim phrase acquiring interest data. The word acquiring is there, and then you have the defined— What if they had said acquired interest data? I still think that we would have a problem with lexicography because as far as I'm aware, the court has never taken a definition of one term, acquired data. They used that to change the definition of a different term that is explicitly in the claim, interest data. Interest data is clearly in the claim, and its definition, part of it, is active or passive data. If it was changed to acquired data, I think we'd still have an issue. If it was retrieving acquired data— Acquired data is only active data. Interest data could be active or passive, but it has other components. It's not just active or passive. It has other parts to its meaning. So why couldn't they just stack it and say this is acquired interest data. Therefore, it is active interest data. So they could have done that. I think there's a couple leaps of logic that we need to take to get there. And kind of taking a step back, we're in the world of lexicography, which this court is clear it's an exacting standard. It needs to be precise and deliberate redefinition of a term, especially a term that has a plain meaning like acquiring. Do you think that the answer to the question might differ according to whether in the three-word phrase acquired interest data, acquired was being used as a verb or instead as a double-adjective three-word label for essentially as a noun with two modifiers? I think that raises an interesting question because the term is acquired data. Acquired is being used as an adjective in that defined term. There's no lexicography in the specification saying that we're going to change the verb acquire to now mean that everything that's referenced as having been acquired or acquiring is active data. What do you think they mean in the specification? Because I'll be honest, I've never seen this before. I don't know, I've probably read at least 10,000 patents. What in the world do they mean by its equivalence in verb forms? I'm glad that you also had confusion there. I've read not tens of thousands of patents, but I've read a handful. I've never seen that term used. I've certainly not seen it used in a definitional passage. But it's kind of weird because acquired data, they want this to encompass its verb forms. Well, the words acquired data, like you suggested, seem to have an adjective and a noun, so what do the verb forms mean? What did the patent do you mean by that? I don't know. I think what the board interpreted that to mean would be that you could have acquiring and acquired are both verb forms of the verb to acquire, and that perhaps that broadened it in the board's view so that the term acquiring was redefined. But respectfully, that's the error that the board committed, which is if the patentee wanted to redefine the everyday ordinary word acquire to limit it to active data, they should have said acquire, and it's verb forms, as used here and is limited to the retrieval of active data. They didn't do that. They used this weird phrase of acquired data, its equivalence in verb forms, which you'll see in the specification. It seems to be like a boilerplate language that they used because they used it with multiple definitions, including words like interest data, which both parties agreed there's no verb form of the word interest. So it's really confusing what they put in there. There is a verb form, just no applicable one in this context.  Again, lexicography is an acting standard. It's a heightened burden because the presumption is that the plain meaning should apply. But redefinition can be done by implication, right? It can be done. And that has to be clear, though. Exactly. The explicit definition and implicit one both need to be concise and deliberate so that the public knows what the redefinition is. So how clear does it actually have to be if it's redefined by implication? It has to be clearer than what we have here, Your Honor. Because I think one critical thing that we haven't touched yet is the specification. There's a series of embodiments disclosure, which really should have been dispositive below, and the board didn't even address it, even though we raised it in our briefing. The series of embodiments disclosure is at Columns 3, Lines 47 and 53. And this is where they're describing the invention at a high level. And they talk about two series of embodiments. In the first series, you have a comparison between interest data acquired prior to delivery of issued data. And then you have a second series of embodiments where you have monitored data by definition acquired after delivery of issued data. So in this, you have the word acquired being used. Claim 19 only pertains to the first set of embodiments, right? Claim 19 only pertains to the first set of embodiments. Correct. I would agree it pertains to the first one. And it uses the term acquired to describe when you're obtaining the data, and that's interest data. But the key part is the last sentence that says, in both series of embodiments, acquired and or available data may be used for comparison with suitable model data. The and or is key because the or means that you can just use available data, and available data, again, is another defined term, and it's passive data. So that's saying that the data, the interest data that has been described as acquired, can just be available data. And if it can be just available data, then it can be just passive data. And that's entirely consistent with giving acquiring its plain and ordinary meaning in the claim language. And if we look just at Claim 19, and we were getting there earlier, which is if we limit Claim 19 to obtaining active data, then we effectively have rewritten the claim to remove interest data. And that's contrary to basic principles of claim construction. Interest data has three parts of its definition. It has to be, it's active or passive data. It can be acquired or obtained before or after issue data. It has to correlate to data that's in the model data. The latter two parts of that, when it's acquired and that it correlates to the model data, that's already explicitly accounted for in Claim 19, which requires that it be obtained prior to delivery of the issued data, and that it be subsequently compared to the model data. The only thing not explicitly covered in Claim 19 is that it's passive or active data. So that's what interest data is adding to this claim. It's an independent claim. Patentees, as most patentees do, they use the broad term interest data so that they can start with their independent claim and presumably try to narrow it down with the dependent claims. And speaking of dependent claims, Dependent Claim 20 says wherein the interest data consists of available data, not comprises available data, but consists, means it's made up of available data, which, again, is passive data. So Claim 20 is describing an embodiment in which the interest data is just passive data. That's what our prior art reference describes as well. It should have been dispositive under ordinary claim differentiation principles because if 20 depends from 19, then 19 has to be broad enough to encompass a scenario where you just acquire passive data. The board sidestepped this because Claim 20 is poorly written and it says it depends from Claim 1. Respectfully, I don't think there's a reasonable way you can read 20 as actually depending from Claim 1 because there is no antecedent basis for interest data in Claim 1. It's not in Claim 1. It's not in Claims 2 through 18. Where does interest data come in? It comes in in the independent claim 19, the immediately preceding claim to 20. So the normal way the patents are drafted is you have the independent claim and then the dependent claims that follow right after that. Here you have interest data. It only finds its basis in Claim 19. But your audits don't need to resolve that issue because after spending roughly 11 pages of their brief debating this issue, no bots can see that page 47 of the brief that this is subject to reasonable debate. They could be right. We could be right. There's a reasonable debate about what 20 depends from. But if it's reasonable to read 20 as depending on 19, which would mean that it's reasonable to read 19 as encompassing a scenario which you acquire simply passive data, then that heightened standard of lexicography cannot have been met in this case. It can't. Lexicography is supposed to foreclose any reasonable dispute as to whether a term has been redefined or not. That's simply not met here. And just one final point on the infringement contentions, Your Honor. When they sued Google, presumably after having done their diligence and getting a Rule 11 basis to do so, they provided preliminary infringement contentions. And it's available in Appendix 19-15. And if you look at those contentions, you'll see that they said Google allegedly infringed because, quote, Google obtains interest data in the form of browser cookies, the user agent of the browser, and one or more IP addresses. That's all passive data. They pointed to passive data when they alleged that my client infringed. And another thing to note is that they paraphrased the claim, which you typically do when you're doing the prose of your infringement contentions, and they switched acquiring and they used obtains. And why did they do that? Because they're synonyms. They have the same plain and ordinary meaning, which is just retrieving. Nowhere in their contentions do they suggest that the definition of acquired data somehow impacts the scope of this claim. Indeed, if you look at Appendix 19-14, the immediately preceding page, the only definition that they point to is interest data, and they do it to emphasize the fact that interest data is active or passive data. They did that because they were then going to point to passive data. Respectfully, if the patent owner themselves, when reading this claim, asserting it against Google, they didn't see this lexicography issue when they initially sued us. They didn't discover it until after they were faced with an anticipatory disclosure from KITS. The heightened standard of lexicography has not been met. This is supposed to be something that the public can read right away and know that the word acquiring has been narrowly defined. I submit it hasn't occurred here. The Board committed error with this claim construction. There's no dispute that under the proper construction, where acquiring is giving its plain meaning, that KITS anticipates, and so therefore the Board's decision should be reversed. Would you like to save the remainder of your time for rebuttal? Yes, please. Thank you. And I suggest that you take a couple of breaths because I think in the first 11 minutes you didn't take any. Sorry about that, Your Honor. May it please the Court. Your Honor, the issue before the Court is whether the Board erred in construing acquiring interest data to require the retrieval of at least some active data. We think there are two critical facts that prove that the Board was correct, and then I'll get to Google's specific arguments. First, Google cannot dispute that the inventor acted as his own lexicographer by defining the act of acquiring data to require some active data. And I'm going to go to the portion of the specification that's column 3, lines 24 to 32. I'm only going to read the important part for purposes of this argument. The term acquired data, its equivalents, and verb forms. The Board correctly found that acquiring data is a verb form of acquired data. We think that's just common sense. But even if that's not clear on the face of the definition, the patent goes on to provide quite a bit of detail about how data is acquired. And this is a part of the specification that Google spends almost no time discussing because it's so equivocal and it explains it so clearly. That's column 3, line 65, to column 4, line 17. It's a fairly lengthy passage, but I'm just going to read a couple of tidbits. And it says, quote, unquote, acquired data requires some form of information capture means. So why does it require some form of information capture means? Because active data is a particular type of data, such as keystrokes or mouse cursor movements. Another part of the same passage says- is active data. I think that is clearly defined. My concern is that this isn't a product claim. This is a method claim. And so as a method claim, you expect in each step to have a verb because a method is a series of steps. And I'm having a little trouble not reading the word acquiring as the verb in that sentence. And if it's the verb, then it's not the predicate adjective before the word data. It's the verb. And it's being used as a verb telling you what to do and when it has to occur. And if that's the case, it doesn't fall within the patentee's lexicography. So quite frankly, that's how I see this case. And I think you would be most useful if you would tell me what's wrong with that. Sure, Your Honor. I believe that the definition of acquired data and its equivalent verb forms means that when you're acquiring data, it requires the retrieval of active data. Interest data is a type of data. It's a type of data that the patent actually says can include active data. And I think, to Jeff Toronto's point earlier, this distinction between verb and noun, the verb acquiring, right, acquiring data in this claim, the data is interest data. And the patent says interest data can include active data. So that, in our view, makes perfectly logical sense. And I will point out that the specification uses the word receiving data, collecting data, obtaining data. It actually uses the word obtaining and acquired in the same sentence. So what does that tell us? That tells us that the patentee knew how to use a broader term when the patentee wanted to refer to retrieving any type of data. No, you also talk about, he also uses the word acquired as a verb in other places. Column 3, line 40 or 50 would be an example. That's using the word acquired as a verb. It's absolutely not referring only to active data. You used it interchangeably, sometimes as a verb without meaning it was limited to active data, and sometimes as an adjective on data saying it should be limited to active data. Well, to be clear, I don't think it, we don't view it as meaning it's limited to active data. We just view it as meaning there has to be some active data in whatever's received, right? So monitor data that's been acquired has to have at least some active data in it. It could also have passive data, but the requirement of acquiring acquired, the way that's defined in the specification, it's a particular way of obtaining the data using information capturing means. I think if that makes sense. It makes sense. I just don't buy it. I understand your argument. Understood, Your Honor. Let me just bring in something that I don't think it's been cited in the briefs, but even putting aside the very high standard for lexicography in kind of normal legal phrase interpretation, sometimes, as the Supreme Court has said, a two-word phrase can have quite different meaning from what its individual word components used separately can mean. I'm thinking of the 2011 Supreme Court case called FCC against AT&T, in which the question was whether the phrase personal privacy should be interpreted by breaking it into pieces and saying, well, personal is an adjectival form of person. A corporation is a person, so a corporation can have personal privacy. And the Supreme Court said, no, that's crazy. Why isn't this like that? The two-word phrase acquired data, which has no particularly obvious intuitive meaning, was adopted as a two-word noun to label a particular thing given a definition. One wouldn't, I think, just naturally think that that means there has been a definition of the word, of the general word acquired when used as a verb outside that little two-word coined phrase. Yes, Your Honor. I think it comes down to what equivalence in verb forms means. Right. So that's the one thing you have to try to rely on. And to me, the problem with that is that it reads, and I would think a skilled artisan reading that phrase as it appears in here, as dropped in in a bunch of places almost like a stock phrase, though I'm not sure we've seen it before, including places where it's obviously inappropriate. So you wouldn't think that any serious redefinitional work is being done by what somebody wrote, by what somebody did to write in that phrase on occasion, including in places where it's quite inappropriate. Your Honor, first I want to address the last point you raised about the equivalence in verb forms language. I mean, even if it's inappropriate in other places in the specification, we think it makes perfect sense within this particular definition. And, in fact, the specification uses the phrase acquiring data to refer to data that is unequivocally, unquestionably acquired data in the context that fits within that definition. So we think, and that's on line, column 3, line 65 to column 4, line 17, where it says such monitoring and retaining means for acquiring data. So it is using the verb form acquiring data to refer to acquired data exactly as that term is defined in the spec, and that's also consistent with the verb form in equivalence language. So we think, and I think part of the issue is Google myopically focuses on one part of the spec, but when you read the specification, I believe acquired is used, some form of acquired is used 12 times in the specification. We don't think there's a single time where it's used inconsistent with the definition of acquired data. And there may only be, this may be the only instance where acquiring data is referred to, but even in that instance it's used consistent with the definition in column 3, lines 24 to 32. Isn't it, don't you think it's odd, or shouldn't, can't we think it odd, that all the work in this patent is done in column 3, and a little bit at the top of 4. But around, I guess this is column 3, lines 49 to 50, it says, interest data acquired prior to delivery. It has just defined interest data to include both passive and active. And you're saying, no, no, no, it's just sort of took that back. Well, it can include active and or passive data, right? Yes. So, I mean, when you've just defined the phrase interest data, that includes passive and active, can include passive and active, or either or both, right, either. And then you immediately thereafter use this general word in a verb form to talk about acquiring interest data. You're saying, well, that must mean only acquiring half of what we've just defined. That's odd. I agree with you that that might be odd, Your Honor. The one thing I think you have, I don't know, going for you is this stock phrase that's been dropped in. And I guess I just have a hard time believing that that should be given much effect. Yes, Your Honor. And I guess our position would be that at least we're not aware of precedent where the court has just ignored a phrase in the specification, even if that phrase is used other places that might not make sense. We think it makes perfect sense in the context of that definition. Right. It wouldn't be ignoring it. It would be saying when a phrase has been put in a bunch of places, you can't give it the kind of quite radical significance that you're giving it to override the ordinary meaning of the word that's actually in the claim, acquiring, which is obviously broad, to then build in a limitation on that by finding lexicography, not for that word alone in the spec, but for a double word phrase, which can sometimes be something different from what each of its components means. Yes, Your Honor. I understand your point. And I think our position just at a high level would be that the act of acquiring data is defined. It's defined via that definition. For acquired data, it's equivalent in verb forms. If acquiring data requires active data per that definition, then acquiring interest data must require it as well. And that's, like we said, consistent with the definition of interest data in the specification. I do want to turn real quick if there are no further questions. I do have a question. Yes, Your Honor. And maybe I missed it, but does the PTAB ruling anywhere appreciate or mention this high standard of lexicography that's been mentioned here? I don't recall off the top of my head if they specifically mentioned the high standard of lexicography. I don't remember them citing any particular law on that point. Okay. Thank you. Would you like to address Claim 20, the dependent claim? Yes, Your Honor. I would love to address that. That was actually where I was going next. Excellent. So the first thing I want to point out about Claim 20 is they've already invalidated Claim 20 under the board's construction where Claim 20 depends on Claim 1. They are now trying to come back and say, oh, wait a second, never mind. This court should now interpret Claim 20 as depending on Claim 19, even though it expressly depends on Claim 1. I mean, we think that vote is sailed. Claim 20, they can't come in here and now argue that it should depend on Claim 19 when they've already invalidated Claim 20 based on its dependency on Claim 1. So you think that we should assume some sort of judicial estoppel? I mean, I think that the— I mean, claim construction is a matter of law. So I get to construe Claim 20 as a matter of law. I'm not usually bound by anything parties stipulate to on law. I'm only bound by facts they stipulate to. So are you saying as a matter of judicial estoppel, for equitable reasons, I shouldn't allow them to sway me in my determination of a legal issue? I do believe that they're estoppel. There's no appeal of the invalidity of Claim 20. I mean, I don't know if they perhaps could have appealed and said, oh, the board should have found Claim 20 invalid under our other interpretation where it depends on Claim 19. They didn't do that. I'm not remembering. What happened to Claim 20 in this IPR? Yes, Your Honor. Claim 20 was invalidated based on the combination of Kitts and Willner, which was a combination that was not asserted against Claim 19. But they did assert it against Claim 20. And they said—and Google's position was they applied Claim 20 as if it depended from Claim 1, right? And so Willner and Kitts was used to invalidate Claim 20 under that interpretation. Yeah, but did they not assert Kitts against Claim 20? Because Kitts is limited to passive data, and if acquired interest data in 19 includes passive data, then it seems like 20 is dead too. I don't know if I would disagree with that, Your Honor, but I will say they did apply Kitts against Claim 20 and 19 as well. That's a standalone anticipation combination. And the board ended up saying, well, no, we bind. And they actually ruled on this. They found that Claim 20 depends on Claim 1. They looked at the prosecution history. We raised the arguments that there's actually portions of the prosecution history where the patentee expressly stated that Claim 20 was supposed to depend from Claim 1. And the board said that's evidence enough for us to conclude that Claim 20 should have been from Claim 1. And so—and then validated the claim under the program. Can you quickly—do you remember where that prosecution history is? Yes, Your Honor. I have it right here. That would be Appendix 291 to—Page 291 to 92. And it's— I'm there. I don't see anything about Claim 20. Where am I missing? Well, it—let me make sure. Maybe I gave you the wrong quote. I think 292 maybe, not 291. Let's see, 292. It's 291 at the bottom. Let me clarify. So during prosecution, Claim 21 is what issued as Claim 20. I see. And Claim 2 issued as independent Claim 1. And so really, it's just that first sentence there. There's a discussion afterwards. Yeah, I hear you. But I guess, I mean, I guess I kind of thought maybe that's— maybe I think that's just a carryover of the mistake. The same person who drafted Claim 20 and undeniably made an error. Because either the error is to what it depends or the failure to contain antecedent basis. There's nothing in Claim 1 about interest data. So how would you, in Claim 1, narrow interest data, which is not present in Claim 1? Correct, Your Honor. And our position was that that was intended to refer to the model data of Claim 1. Oh, so you're— So that's the—to the extent there's an error there, that's the error, is they claim they referred back to the wrong data. We mean to the extent there's an error there. Are you disputing that there's an error in that? No, there's an error that they only, in our view, the correction— Claim 20 has an error in it. Correct. Okay. Correct, Your Honor. And your argument is the error is having— not saying the word model data instead of the word interest data? Correct, Your Honor. Just out of curiosity, how often have you seen a patent written like this? I know I haven't. Where Claim 1 is the independent claim and then all the things that depend only from Claim 1 usually are 2, 3, 4, 5. You don't—I don't know that I've ever seen a patent that then introduces a new independent claim, like Claim 19, and then Claim 20 goes back to depending on Claim 1. Do you understand my sort of concern? Have you seen a lot of patents that do that? I know I've seen this happen before. I will say I agree with you that it's rare. It's rare, and I think it's just typically the way they order the claims. I mean, typically they'll order them, and they would have moved 20 in this case up one, right? Right, up 2. That's typically what happens, right? That's just typically the way I think the examiners do it when they issue the claims, and I don't know why that didn't happen here, but I understand your point, Your Honor. Okay. Okay, thank you so much. We'll hear from Mr. C. You've got a little bit of rebuttal time. Thank you. Thank you, Your Honor. Just briefly on the stock phrase equivalence and verb forms, I just want to point out another thing that's kind of troubled me with that is the word equivalence. They've taken the position that the terms obtaining, retrieving, and what have you are also used in the specification. Those are synonyms of acquiring. I would consider those to be equivalents of acquiring, but they've conceded that those other terms are used to reference the generic reception of information. So it just shows that this stock phrase, as Your Honor put it, really adds just confusion, and in the case of lexicography, we can't have confusion. On the Claim 20 thing, just so we're all on the same page, because it had an error on its face, our petition said if it depends from one, it's unpatentable, and that's at Appendix 165 to 166. Then we said if it depends from Claim 19, it makes sense that it would. It's also unpatentable that way. We showed it both ways. The Board just went with the first one. We didn't appeal the claim construction because we prevailed below and it would have been an improper appeal for us to do that. But for that same token, traditional principles of estoppel can't apply because we couldn't appeal it. Well, you couldn't appeal it, and you couldn't even do it as a conditional cross-appeal because they didn't appeal it. Exactly. There's just nothing we can do about it, and so we're not bound by that construction. Your Honor is certainly not bound by that construction. Again, you don't actually need to correct it. You just have to agree that it introduces more ambiguity, and we can't have lexicography with this ambiguity. I'll just point out there was no dispute that KITS does anticipate Claim 19 under our construction, and so there's no need for remand or reversal would be appropriate. Unless there's any questions, I will breathe one more time. Thank you, Mr. Speed. Thank you, counsel. This case is taken under submission.